UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Jennifer Turner,<br><br>                           Plaintiff,<br><br>vs.<br><br>Kilolo Kijakazi,[1] Acting Commissioner of Social Security,<br><br>                           Defendant. | Civil Action No. 5:21-01395-TLW-KDW<br><br>REPORT & RECOMMENDATION |

Plaintiff Jennifer Turner ("Plaintiff") brought this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her claim for disability insurance benefits ("DIB") and supplemental security income ("SSI") under the Social Security Act ("Act"). For the reasons that follow, the undersigned recommends that the Commissioner's decision be reversed and remanded for further administrative action.

I.    Relevant Background

    A.    Procedural History

Plaintiff applied for DIB and SSI on April 23, 2018 alleging an onset date of December 31, 2010. Tr. 235–36, 242–52. Plaintiff's applications were denied initially and on reconsideration. Tr. 112, 168. On January 10, 2020, at Plaintiff's request, an Administrative Law Judge ("ALJ") conducted a hearing, at which the ALJ heard from Plaintiff and an impartial vocational expert ("VE"). Tr. 39–71. The ALJ issued a decision on August 14, 2020 finding Plaintiff not disabled. Tr. 19–31. The Appeals Council denied review. Tr. 2–6. Thus, the ALJ's decision became the final

---

[1] Kilolo Kijakazi became Acting Commissioner of Social Security on July 9, 2021. Pursuant to Fed. R. Civ. P. 25(d), she is automatically substituted for Andrew Saul as the defendant in this action.

decision of the Commissioner. Plaintiff brought this action seeking judicial review of the Commissioner's decision in a Complaint filed on May 10, 2021. ECF No. 1.

      B.    Plaintiff's Background

Plaintiff was born in March 1981 and was 29 years old on her alleged onset date of December 31, 2010, Tr. 283, and 38 years old at the time of the administrative hearing, Tr. 62. In her May 1, 2018 Disability Report-Adult form Plaintiff indicated that she completed two years of college and she had not completed any type of specialized job training, trade or vocational school. Tr. 288. Plaintiff listed her past relevant work ("PRW") as a collection agent for a collection service (2002-2005), a school teacher (2005-2006), and as an ambulance EMT (2007-2010). *Id.* Plaintiff indicated that she stopped working on June 30, 2010 because of her child's disability, but that her conditions became severe enough to stop her from working on December 31, 2020. Tr. 287. Plaintiff listed lupus as the medical condition that limited her ability to work. *Id.* Plaintiff indicated her height as 5'8" and weight as 270 pounds. *Id.* She also indicated that her conditions caused pain or other symptoms. *Id.*

In a January 7, 2019 Disability Report-Appeal Plaintiff indicated a change in her medical condition that occurred October 30, 2018. Tr. 333. Plaintiff indicated that she has "become more tired. My joints are more stiff. It is ha[r]der to walk and get dressed. Normal things like drying my hair and washing are difficult." *Id.* Plaintiff also noted a new condition of "severe knee pain going down my right leg into my foot." *Id.* In a June 20, 2019 Disability Report-Appeal Plaintiff indicated that a change in her medical condition occurred on March 27, 2019. Tr. 390. Plaintiff indicated that she had a few seizures and nerve problems and she "also still can't stand or walk very long." *Id.* Plaintiff also noted a new medical diagnosis of "diastolic dysfunction or diastolic heart failure." *Id.*

C.   Administrative Proceedings

Plaintiff's administrative hearing took place on January 10, 2020 in Greenville, South Carolina before ALJ Colin Fritz. Tr. 39. Plaintiff appeared without counsel, and Vocational Expert ("VE") Karl Weldon also appeared. *Id.*

The ALJ discussed with Plaintiff her right to representation, which Plaintiff declined, and the ALJ accepted Plaintiff's waiver. Tr. 41-43; Tr. 229 (executed Waiver of Representation form).

1.   Plaintiff's Testimony

Plaintiff testified she experienced lupus flares every couple of months, sometimes lasting a whole month. Tr. 47, 49. She stated that during a flare, her entire body hurt, it felt like sharp needles going through parts of her body, she experienced exhaustion to the point that brushing her hair hurt and her husband had to help her get dressed and bathe, and she had decreased use of her hands. Tr. 48–49. Plaintiff said she did not have problems with her hands in between flares unless it was cold outside. Tr. 49. She stated she had been seeing a rheumatologist and took Plaquenil daily for the inflammation, but her condition had not improved. Tr. 49–50. Plaintiff testified she was diagnosed with lupus in 2013 but did not start experiencing problems until 2017. Tr. 56–57.

Plaintiff used a mobility chair at the hearing and testified she had been using it since November because of her back pain. Tr. 44–45. She stated a recent x-ray and CT scan had shown degenerative disc disease in her lower back that was not seen on her previous lumbar MRI. Tr. 45. Plaintiff testified she had another MRI scheduled for the end of the month. Tr. 46. She stated she began seeing Dr. Wilson in December 2019 regarding back pain and had requested the records from his office, but they would not send them. Tr. 45–46. Plaintiff's back pain started in December 2017 and started impacting her ability to stand in January 2018. Tr. 55. She stated she could only stand for five or ten minutes before needing to lean on something or sit down. Tr. 55.

3

Plaintiff stated she has a chronic cough and was scheduled to begin pulmonary rehabilitation soon. Tr. 47. Plaintiff testified she had a driver's license but had not driven since experiencing a seizure in May 2019. Tr. 47–48. She stated that, when she is not experiencing a lupus flare, she is still unable to perform her activities of daily living and would not be able to perform a job involving typing or handling because of fatigue. Tr. 49–50. Plaintiff explained she was always tired, to the point that even little things would exhaust her and result in pain. Tr. 50. She stated fatigue had been a problem for her since her lupus diagnosis and she would not be able to perform a job where she sat most of the time because she would get tired of sitting. Tr. 56.

Plaintiff testified she last worked as an EMT but stopped when she was pregnant with her son. Tr. 51. She had also previously worked as a preschool teacher. Tr. 52. At the time of the hearing, Plaintiff was 5'8" and weighed 292 pounds. Tr. 54. She stated she did not apply for benefits earlier because she thought she was too young and she did not look for work because of her anxiety. Tr. 55–56.

Regarding her daily activities, Plaintiff testified she took her children to school, then did housework with the help of her husband and a neighbor. Tr. 57. Plaintiff had four children who saw specialists regularly and were in various types of therapies, so most days she and her husband were taking their children to appointments. Tr. 57. Plaintiff stated she was fairly functional until 2017 and, on good days, would also visit her in-laws. Tr. 58.

Plaintiff stated she began experiencing gastrointestinal problems in 2017 and was diagnosed with Crohn's disease in November 2019. Tr. 58–59. She testified she spends 80% of her day in the bathroom and has Crohn's flares once or twice a month where the pain is so bad that she stays in bed. Tr. 60. Plaintiff did not take the medicine the doctor wanted to prescribe for her

4

gastrointestinal problems because it was not covered by Medicaid and was too expensive, but she did take a different medicine. Tr. 61.

Plaintiff stated she also had diastolic heart failure that was not adequately controlled. Tr. 62. She took medicine for fluid buildup but would get out of breath easily. Tr. 62.

### 2.     VE's Testimony

The VE classified Plaintiff's past work as an EMT, Dictionary of Occupational Titles ("DOT") number 079.364-026, as SVP 6, very heavy, but performed at a light level. Tr. 65–66. He further classified her past work as a childcare attendant, DOT number 355.674-010, as light work, SVP 7. Tr. 66. The VE testified a hypothetical individual of Plaintiff's age, education, and past work experience, who could perform work at a sedentary level but never climb ladders, ropes or scaffolds; occasionally climb ramps and stairs, kneel, crouch, and crawl; occasionally stoop to lift from floor to waist and frequently stoop to lift from waist height and above; frequently balance, handle, and finger; occasionally be exposed to bright sunlight and hazards associated with unprotected dangerous machinery or unprotected heights; concentrate, persist, and maintain pace to understand, remember, and carry out unskilled routine tasks in a low stress environment, free of fast-paced or team-dependent production requirements, involving the application of common sense understanding, to carry out instructions furnished in written, oral, or diagrammatic form; deal with problems involving several concrete variables, in or from standardized situations; and adapt to occasional workplace changes could not perform any of Plaintiff's past relevant work. Tr. 67–68.

However, the hypothetical individual could perform work at the sedentary level, SVP 2, in the following jobs: sorter, DOT number 521.687-086, with 434,000 jobs available in the national economy; ampoule sealer, DOT number 559.687-014, with 666,000 jobs available in the national

5

economy; and painter, DOT number 735.687-018, painting small items in a plant, with 119,000 jobs available in the national economy. Tr. 68.

The ALJ then offered the same hypothetical except that this individual was capable of light, rather than sedentary work. Tr. 68–69. The VE testified that hypothetical individual could work in the following light, SVP 2 jobs: office helper, DOT number 239.567-010, with 967,000 jobs available; cafeteria attendant, DOT number 311.677-010, with 381,000 jobs available; and cleaner or housekeeper, DOT number 323.687-014, with 877,000 jobs available. Tr. 69. The VE stated either hypothetical individual would be precluded from work if she would be absent an average of three or more days per month. Tr. 69–70.

II. Discussion

   A.   The ALJ's Findings

In his August 14, 2020 decision, the ALJ made the following findings of fact and conclusions of law:

> 1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2015.
>
> 2. The claimant has not engaged in substantial gainful activity since December 31, 2010, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> 3. The claimant has the following severe impairments: systemic lupus erythematosus, rheumatoid arthritis, degenerative disc disease, obesity, gastrointestinal disorder, and bilateral median neuropathy (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except can never climb ladders, ropes and scaffolds. Can occasionally climb ramps and stairs, kneel, crouch, and crawl. Can occasionally stoop to lift within the exertional level from the floor to the waist. Can frequently stoop to lift within the exertional level from waist height and above. Can frequently balance. Bilateral handling and fingering can be performed frequently within the exertional level. Can occasionally be exposed to bright sunlight and hazards associated with unprotected dangerous machinery or unprotected heights. Can concentrate, persist and maintain pace to understand, remember and carry out unskilled, routine tasks, in a low stress work environment (defined as being free of fast-paced or team-dependent production requirements), involving the application of commonsense understanding to carry out instructions furnished in written, oral, or diagrammatic form. Can deal with problems involving several concrete variables in or from standardized situations. Can adapt to occasional work place changes.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on March 17, 1981 and was 29 years old, which is defined as a younger individual age 18–44, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education (20 CFR 404.1564 and 416.964).

9. Transferability of jobs skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

    11.  The claimant has not been under a disability, as defined in the Social Security Act, from December 31, 2010, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

Tr. 22, 23–24, 29–30.

  B.  Legal Framework

    1. The Commissioner's Determination-of-Disability Process

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are "under a disability," defined as:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]

42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 461 n.2 (1983) (discussing considerations and noting "need for efficiency" in considering disability claims). An examiner must consider the following: (1) whether the claimant is working; (2) whether the claimant has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[2] (4) whether such impairment prevents claimant from performing PRW; and (5) whether

---

[2] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525. If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, she will be found disabled without further assessment. 20 C.F.R. § 404.1520(a)(4)(iii); § 416.920(a)(4)(iii). To meet or equal one of these Listings, the claimant

8

the impairment prevents the claimant from performing specific jobs that exist in significant numbers in the national economy. *See* 20 C.F.R. § 404.1520, § 416.920. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 404.1520(a)(4) and § 416.920(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if he/she can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. *See* 20 C.F.R. § 404.1520(a), (b); § 416.920(a), (b); Social Security Ruling ("SSR") 82–62 (1982). The claimant bears the burden of establishing his inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that she is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264–65 (4th Cir. 1981)*; see generally Bowen*, 482 U.S. at 146. n.5 (regarding burdens of proof).

---

must establish that his impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 404.1526; § 416.926; *Sullivan v. Zebley*, 493 U.S. 521, 530-31 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

9

2. The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner of Social Security made after a hearing to which he was a party. . . ." 42 U.S.C. § 405(g). The scope of that federal court review is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See id.*, *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls v. Barnhart*, 296 F.3d at 290 (citing *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try [these cases] de novo, or resolve mere conflicts in the evidence." *Vitek v. Finch*, 438 F.2d 1157, 1157–58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005); *see also Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (explaining that, "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high," as it means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion"). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings, and that his conclusion is rational. *See Vitek*, 438 F.2d at 1157-58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

C.  Analysis

Plaintiff contends the ALJ erred in his consideration of Listing 14.02 and opinion evidence from consultative examiner Dr. David Holt. The Commissioner asserts the ALJ properly analyzed these issues and that his decision is supported by substantial evidence. The undersigned agrees with Plaintiff regarding the first issue and recommends remand for further consideration of Listing 14.02.

1.  Listing Analysis

Plaintiff argues the ALJ failed to properly consider whether her systemic lupus erythematosus ("SLE") met the applicable listing criteria. In determining whether a claimant's impairments satisfy the requirements for a relevant listing, the ALJ must identify the relevant listed impairment or impairments, discuss the relevant evidence, and compare that evidence to the requirements in the applicable listings. *Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986). "In cases where there is 'ample factual support in the record' for a particular listing, the ALJ must provide a full analysis to determine whether the claimant's impairment meets or equals the listing." *Peck v. Colvin*, No. 8:12-cv-02594-DCN, 2014 WL 994925, at *12 (D.S.C. Mar. 13, 2014) (quoting *Cook*, 783 F.2d at 1172). "Without such an explanation, it is simply impossible to tell whether there was substantial evidence to support the determination." *Id*; *see also Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013).

Listing 14.02 defines SLE as:

> a chronic inflammatory disease that can affect any organ or body system. It is frequently, but not always, accompanied by constitutional symptoms or signs (severe fatigue, fever, malaise, involuntary weight loss). Major organ or body system involvement can include: Respiratory (pleuritis, pneumonitis), cardiovascular (endocarditis, myocarditis, pericarditis, vasculitis), renal (glomerulonephritis), hemotologic (anemia, leukopenia, thrombocytopenia), skin (photosensitivity), neurologic (seizures), mental (anxiety, fluctuating cognition

("lupus fog"), mood disorders, organic brain syndrome, psychosis), or immune system disorders (inflammatory arthritis) . . . .

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 14.00(D)(1)(a). To establish disability under Listing 14.02, the claimant must show evidence of SLE as described above and:

> A. Involvement of two or more organs/body systems, with:
>
>> 1. One of the organs/body systems involved to at least a moderate level of severity; and
>>
>> 2. At least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss).
>
> OR
>
> B. Repeated manifestations of SLE, with at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss) and one of the following at the marked level:
>
>> 1. Limitation of activities of daily living.
>>
>> 2. Limitation in maintaining social functioning.
>>
>> 3. Limitations in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 14.02.

In December 2014, Plaintiff established care with a new doctor and reported a history of lupus. Tr. 578. Plaintiff received rheumatology referrals multiple times between 2014 and 2017, Tr. 543, 547, 553, 562, 564, 570, and eventually established care with Dr. Muthamma Machimada in January 2018, Tr. 1073. Dr. Machimada's initial impression was "a positive ANA with a few symptoms of an underlying autoimmune disease." Tr. 1077. He prescribed Mobic for Plaintiff's pain, but no anti-rheumatic drug. Tr. 1077. However, Plaintiff soon returned with reports of lower-back pain. Tr. 1055. A lumbar spine x-ray revealed facet arthropathy and Dr. Machimada prescribed the anti-rheumatic drug Plaquenil for lupus. Tr. 1050, 1061.

In a March 2018 follow-up appointment, Plaintiff reported feeling fair, but rated her pain and fatigue a 10/10. Tr. 1045. Plaintiff's physical examination was mostly normal, but Dr. Machimada's impression was rheumatoid arthritis, seronegative; systemic lupus erythematosus, unspecified SLE type, unspecified organ involvement; and midline low back pain with bilateral sciatica. Tr. 1052–53. He continued Plaintiff on Plaquenil. Tr. 1052–53. Plaintiff followed up with Dr. Machimada again in August and September 2018 and March 2019. She reported feeling poor and rated her pain a 7/10 and her fatigue a 10/10. Tr. 1054, 1028. Her physical examinations revealed some cervical tenderness but were otherwise normal. Tr. 1032, 1041, 1754. Dr. Machimada switched Plaintiff's pain medication twice and continued her on Plaquenil for her SLE and rheumatoid arthritis. Tr. 1036, 1756.

Throughout the rest of 2018 and early 2019, Plaintiff sought treatment for knee, hip, and back pain and continued epigastric issues. Tr. 834–38, 1547, 1718, 1724, 1729. Plaintiff underwent a cardiac evaluation in February 2019 after experiencing severe dyspnea during a treadmill exercise in October 2018. Tr. 1543, 1578–81. After a normal examination, doctors opined her symptoms were likely due to deconditioning. Tr. 1545, 1658. However, Plaintiff reported dyspnea on exertion in March 2019 and underwent a right and left heart catheterization. Tr. 1767–70.

A June 2019 EMG/nerve conduction study revealed early distal median neuropathy in both wrists with no evidence of radiculopathy involving the right arm. Tr. 1947. A December 2019 lumbar spine x-ray showed mild degenerative disc disease at L5–S1. Tr. 2009. Plaintiff began physical therapy for her back pain but was discharged after missing too many appointments. Tr. 2036. A June 2020 lumbar spine MRI showed mild facet arthropathy, only minimal flattening of the L5 nerve root, and no significant central stenosis. Tr. 2107–08.

13

In addition, as noted above, Plaintiff testified she had suffered a seizure and was experiencing ongoing cardiac complications. Tr. 47–48, 62. The doctor who performed Plaintiff's heart catheterization also wrote a letter on Plaintiff's behalf explaining she experiences shortness of breath on exertion that limits her ability to work on her feet.[3] Tr. 1836. A certified physician assistant provided a letter indicating Plaintiff suffered from multiple chronic gastrointestinal issues that would require continued treatment.[4] Tr. 1844. And the record contains additional evidence related to the constitutional signs or symptoms of SLE. *See* Tr. 1028, 1037, 1045, 1073, 1079, 1161, 1545, 1579, 1654, 1674, 1749, 1903 (fatigue & malaise); 473, 521, 565, 845, 1055, 1161, 1291, 1571, 1777, 1853, 1974 (denying fatigue, fever, chills, malaise, weakness, or unexplained weight changes); 651, 1003 (rash); 1032, 1076, 1549, 1733, 1854 (no rash).

The ALJ found Plaintiff's SLE qualified as a severe impairment, as did her rheumatoid arthritis and gastrointestinal disease—which are potentially associated organ/body systems identified in the listing. Tr. 22. He further noted Plaintiff suffered from mood disorders and hypertension, though at a non-severe level. Tr. 22. The ALJ's RFC analysis also includes references to Plaintiff's fatigue, trouble with concentration and memory, dyspnea on exertion, and reports of facial rash and low-grade fever during lupus flares. Tr. 24–29. The ALJ credited Plaintiff's allegations of photosensitivity by including a related limitation in the RFC. Tr. 23.

However, regarding the listings, the ALJ offered only this cursory, conclusory finding at Step Three:

---

[3] The ALJ found this opinion persuasive but did not discuss its content or how it may relate to potential listing-level SLE. Tr. 29.

[4] The ALJ found this opinion was not from an acceptable medical source. Tr. 29. However, the undersigned notes that under the regulations applicable in this case for claims filed after March 27, 2017, a licensed Physician Assistant is an acceptable medical source. 20 CFR § 404.1502(a)(8); § 416.902(a)(8).

14

> Although the claimant has one or more "severe" impairments, the medical documentation and other evidence in the record (discussed below) do not establish that the claimant has any impairment listed in appendix I to Subpart P, Regulations No. 4. The Administrative Law Judge considered the Listing of Impairments and gave particular attention to Listing[] . . . 14.02.

Tr. 23.

The ALJ summarized some of the evidence discussed above in his RFC analysis, Tr. 24–29, but nowhere in the decision does he compare Plaintiff's symptoms or the related medical evidence to the listed criteria. *See Cook*, 783 F.2d at 1172–73 (finding an ALJ should identify the relevant listed impairments and then compare each of the listed criteria to the evidence of the claimant's symptoms where there is ample evidence supporting listing-level severity). Indeed, the ALJ fails to even identify the elements of Listing 14.02, let alone explain how Plaintiff failed to meet those elements. While "[t]here is no requirement . . . that an ALJ provide an exhaustive point-by-point breakdown of every listed impairment," his "decision as a whole" must provide a "coherent basis" for his Step Three determination. *Keene v. Berryhill*, 732 F. App'x 174, 177 (4th Cir. 2018). Here, even considering the entirety of the ALJ's decision, the undersigned cannot piece together a coherent listing analysis without impermissibly reweighing the evidence.

Without further explanation of how the ALJ considered the evidence discussed in his RFC analysis and the other relevant evidence in the record in the context of Listing 14.02, the court cannot determine whether the ALJ's decision was supported by substantial evidence. *See, e.g.*, *Owens v. Saul*, No. 8:19-01180, 2020 WL 1067499, at *2 (D.S.C. Feb. 14, 2020), *adopted by* 2020 WL 1065919 (D.S.C. March 5, 2020) ("The ALJ's conclusory finding at Step 3 and her failure to analyze the [relevant] record evidence in the context of Listing 14.02A precludes meaningful judicial review of this issue."); *Reynolds v. Berryhill*, 387 F. Supp. 3d 642, 644 (D.S.C. May 21, 2019) ("Courts have repeatedly held that '[i]n considering whether a claimant's condition meets

or equals a listed impairment, an ALJ must discuss the listing by name and offer more than a perfunctory analysis of the listing.'") (quoting *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). Accordingly, the undersigned recommends remand for further consideration of Listing 14.02. *See Mascio v. Colvin*, 780 F.3d 632, 637 (4th Cir. 2015) (noting that "remand is necessary" because the court is "left to guess about how the ALJ arrived at his conclusions").

III.     Conclusion and Recommendation

The court's function is not to weigh evidence or substitute its judgment for that of the Commissioner but is to determine whether the ALJ's weighing of the evidence is supported by substantial evidence in the record. *See generally Hays v. Sullivan*, 907 F.2d at 1456 (noting judicial review limited to determining whether findings supported by substantial evidence and whether correct law was applied). Based on the foregoing, the undersigned recommends that the Commissioner's decision be reversed and remanded for further administrative action.

**IT IS SO RECOMMENDED.**

May 24, 2022                                                                              Kaymani D. West
Florence, South Carolina                                                    United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**